Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 332 | **DATE** | 9/24/2002 |
| **CASE TITLE** | Lucky Irorere vs. United States of America | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Irorere's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. Section 2255 is DENIED.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 2 5 2002 | |
| | Notified counsel by telephone. | | date docketed | 34 |
| ✓ | Docketing to mail notices. | | CV | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAP | courtroom deputy's initials | 02 SEP 25 AM 8:15 | date mailed notice | |
| | | Date/time received in Central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT **FILED**
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SEP 24 2002

Judge Harry D. Leinenweber
U.S. District Court

LUCKY IRORERE,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

Case No. 01 C 332

Hon. Harry D. Leinenweber

**DOCKETED**

SEP 2 5 2002

## MEMORANDUM OPINION AND ORDER

Pending before the court is Plaintiff Lucky Irorere's ("Irorere") Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. §2255. Petitioner primarily argues that due to the considerably late filing of the Government's response to Petitioner's original Motion to Vacate, the court should deny the Government's filing and grant Petitioner a writ of *habeas corpus*.

## BACKGROUND

Irorere was indicted for: (i) conspiring to knowingly and intentionally import heroin in the United States; and (ii) knowingly and intentionally importing heroin into the United States in violation of 21 U.S.C. §§ 952(a), 963, and 18 U.S.C. § 2. On February 18, 1999, a jury found Irorere guilty of both counts; on October 6, 1999, he was sentenced to 100 months imprisonment. Petitioner timely filed an appeal on October 14, 1999, and the

34

Seventh Circuit affirmed both the conviction and sentence on September 26, 2000. *U.S. v. Irorere*, 228 F.3d 816 (7th Cir. 2000). On January 17, 2001, Irorere timely filed this present § 2255 Motion to Vacate, Set Aside or Correct Sentence. Due to the departure of the originally assigned Assistant United States Attorney, the Government failed to reply to petitioner's original motion. The Court granted the Government three more motions to extend time in October 2001, November 2001, and January 2002. Petitioner argues that he was not given any notice of the Government's motions for leave to extend time, but only received the subsequent court orders. Irorere contends that the Government's failure to respond until March 2002 requires that the court decline its Motion to File Instanter and award summary judgment for the Petitioner due to default. In addition, petitioner has filed numerous subsequent motions and letters since his original filing, some of which are not legally sufficient.

In early December 1997, a cooperating source ("CS") for the Drug Enforcement Administration (the "DEA"), Mark Lasyone, was introduced to an individual known as Nicholas Onaro (a.k.a. "David") and his girlfriend Thiamchan Chiawan (a.k.a. "Sophie"). As part of a DEA operation investigating West African groups trafficking heroin from Thailand to the United States, Lasyone has been placed in Thailand with the hopes that he would be recruited by such a group. *See* Def. Rep. p. 2.

From late 1997 to early 1998, Lasyone developed a business relationship with Onaro and Chiawan in Thailand. Under the direction of the DEA in January 1998, Lasyone offered Onaro two undercover Chicago postal addresses and an undercover fax number to accept delivery of heroin packages. Working in conjunction with Lasyone were Special Agent Anthony Thomas (a.k.a. "Tony") and DEA Special Agent Jeff Johnson. Agent Tomas, whose undercover role was as a friend of Lasyone's son-in-law in the United States, was to receive the heroin packages at the designated address and to oversee their delivery to Onaro's U.S. contacts. Agent Johnson's undercover role was that of Lasyone's son-in-law. *See* Def. Rep. p. 3.

On February 16, 1998, Agent Thomas received the initial telephone call from an unidentified man who called himself "Tony, David's friend." *See* Petitioner's Response, Ex. E; Tr. 75. Tony provided his cellular and pager numbers to Agent Thomas and arranged to call him again, "once he talked to David [Onaro]" about future contacts. It is important to note that both Agent Thomas and the unidentified man utilized the same alias "Tony." *Id.*

On March 10, 1998, Lasyone, Onaro and his girlfriend, Chiawan, met in a Bangkok hotel to organize the details of the heroin transfer, pick up, and the exchange of money, all of which the DEA videotaped. The Government avers that the entire conversation

among the three at the Bangkok hotel alluded to and identified Irorere as the U.S. heroin conduit.

Throughout the meeting, Onaro, Chiawan, and Lasyone referred to Onaro's U.S. contact as "your/that guy." After agreeing for Chiawan and Agent Thomas to "take the stuff to this guy," "get the money," and return to a nearby hotel where Lasyone would be waiting, Onaro asked whether Chiawan would have an opportunity to count the money. Onaro then suggested that Chiawan and "Lucky count the money . . . and maybe Tony [referring to DEA Agent Thomas] wait outside." See Def. Rep. p. 4. After outlining a preliminary plan of action, Lasyone confirmed with Onaro that, "You talked to your guy? He's still set? Your guy in America, everything's set?"

On March 24, 1998, a package containing 310.7 grams of heroin was sent to the undercover Chicago postal address with final delivery on March 26, 1998. On the same day the package was mailed from Thailand, Tony returned a phone call from Agent Thomas at about 1:30 p.m. See Petitioner's Response, Ex. E. Agent Thomas recorded the conversation with Tony as they continued to make the necessary arrangements for the meeting.

> "What day are you guys going to make it?"
> Agent Thomas asked.
>
> Tony responded, "He [Lasyone] will be here on Monday night."

Both Chiawan and Lasyone were scheduled to arrive in Chicago from Bangkok on the following Monday, March 30, 1998. Tony told Agent Thomas, "What I do is once I get in town[,] I'll call you and tell how it will go." [sic] See Def. Rep. p. 5.

At approximately 1:45 p.m., however, Agent Thomas received and recorded a second incoming call from an unknown man with a Nigerian accent, who first questioned Agent Thomas about whether he understood "what I'm talking about?" Agent Thomas said yes, to which the unknown man replied that he had contacted Onaro and that he would call Agent Thomas when he arrived into town. See Petitioner's Response, Ex. E. Both conversations were recorded and properly entered into evidence at trial.

The DEA's report of investigation indicates that on February 15, two men identified themselves as "Tony," although throughout the events that later transpired, Agent Thomas identified Lucky Irorere as "Tony." See Petitioner's Response, Ex. H; see also Tr. 90-96.

On March 30, 1998, Agent Thomas received several phone calls from both "Tony's" throughout the day. First, Tony called and informed him that a "guy named of Junior will be calling you," and confirmed that "Once you pick them up . . . Sophie [Chiawan] is going to be with you right?"

The second phone call occurred at approximately 4:30pm, after Agent Thomas had picked up Chiawan and Lasyone from the airport.

Agent Thomas, Chiawan, Lasyone, along with DEA Special Agent Jeff Johnson, posing as Lasyone's son-in-law, arrived at a downtown Chicago hotel when Agent Thomas received Irorere's second phone call. Irorere asked to speak with Chiawan, after which she requested Irorere to call her back after Lasyone helped her make an international phone call to "David," *i.e.*, Onaro. *See* Def. Rep. p. 6.

Chiawan spoke with Onaro, mentioning the name "Lucky," before handing the phone to Agent Thomas. Onaro told Agent Thomas that he had spoken to Irorere and that "Lucky would give us a call." Onaro also instructed Agent Thomas not to call the defendant "Lucky," "but to call him 'Junior' because [Onaro] was not supposed to tell [Agent Thomas] his name was Lucky." *Id.*

Later during the evening of March 30, 1998, Irorere called Agent Thomas at least twice more; first, to confirm that everyone and everything arrived fine; and second, to make arrangements to meet the following day. On March 31, 1998, at approximately 11:00 a.m., Onaro telephoned Agent Thomas identifying himself as "David." Onaro informed Agent Thomas that "Junior called me and said he was coming . . . to pick the stuff," and that Junior would be calling him. At approximately 3:00 p.m., Irorere telephoned Agent Thomas to state that he would not be able to meet him until 11:00 a.m. the next day. On the following day, April 1, 1998, at approximately 10:20 a.m., Lasyone engaged in a recorded telephone conversation

with Onaro. Lasyone complained to Onaro that he was "doing my part" of the deal, and that Onaro should ensure that Irorere did his part. Shortly thereafter, at approximately 10:38 a.m., undercover Agents Thomas and Johnson arrived at Chiawan's hotel room in order to meet with Irorere. At approximately 10:48 a.m., Irorere called Agent Thomas from a pay phone inside the hotel and asked Agents Thomas and Johnson to come to the lobby. The agents, however, did not know Irorere's appearance, thus approached an individual – later identified as Irorere – and asked if he was Tony. Irorere answered, "no," but then followed Agents Thomas and Johnson as they walked outside the hotel. Irorere then introduced himself as "Tony," explaining that he had not identified himself when originally approached because he "wanted to basically check us out." Irorere carried with him a duffel bag. *Id.* at p. 8.

Shortly after 10:55 a.m., Agents Thomas and Johnson returned to Chiawan's hotel room with Irorere. In the videotaped meeting, Agent Thomas and Irorere discussed and disagreed whether Irorere was to pay before or after the transfer of heroin. Irorere insisted that "my end of the deal is this. Get the stuff and I'll see you guys in a couple of days . . . David [Onaro] initially told me that it was one was [sic] gone and coming," a "[f]ull one," meaning one kilogram of heroin. . . . I mean he just told me now that the whole thing ah . . . six hundred." *Id.* at p.9.

During the confusion, Chiawan and Irorere telephoned Onaro in Thailand, where Irorere complained that he had been surprised by Agent Thomas's request for immediate payment. Irorere responded, "See, next time I'll be prepared," alluding to future possible transactions. During the meeting Agent Thomas asked Irorere about his aliases inquiring, "Are you Junior or Tony?" To which Irorere admitted, "I'm both man." *Id.* at p. 10.

After sorting through phone calls from Agent Thomas and Lasyone to Onaro in Thailand, the sham heroin was handed by Agent Thomas for Irorere's inspection, then transferred by Agent Thomas to Irorere's duffel bag. After Irorere took possession of the heroin, DEA Special Agent Don Rospond arrested Irorere inside the hotel room. Following Irorere's arrest, Agent Rospond advised Irorere of his *Miranda* rights, which Irorere waived. Irorere admitted that he traveled to Chicago in order to "pick up the drugs that David [Onaro] sent from Thailand." Irorere also stated that, when he arrived at the hotel to meet Agent Thomas, Irorere had the wrong hotel room number and needed to telephone Ornaro in Thailand to correct the room number. Only after obtaining the correct number did Irorere make his initial call to the room from the in-house hotel telephone. *Id.* at 10-12.

### Appellate History

Irorere appealed his conviction to the Seventh Circuit. *See generally United States v. Irorere*, 228 F.3d 816 (7th Cir. 2000).

- 8 -

On appeal, Irorere raised the following issues, all of which were resolved against him:

1. The government presented insufficient evidence that Irorere knew the heroin in question was imported. *Id.* at 822-24.

2. The government presented insufficient evidence of his participation in the conspiracy to admit statements pursuant to F.R.E. 801(d)(2)(E). *Id.* at 824 n.1.

3. The proffered jury instructions were inadequate because they failed to incorporate defendant's theory of the case, *i.e.*, he did not know the heroin was imported from outside of the United States. *Id.* at 824-26.

4. Defendant's Sixth Amendment rights were violated because he did not have counsel at his sentencing. *Id.* at 826-29.

5. Defendant was denied alleged Brady material. *Id.* at 829-30.

6. The indictment returned against defendant was defective. *Id.* at 830-31.

## ISSUES

In his petition for writ of habeas corpus, Irorere alleges ineffective assistance of counsel and various due process violations. Specifically, Irorere alleges the following constitutional violations: (1) the indictment was deficiently returned; (2) denial of counsel at sentencing; (3) failure of his attorneys to claim his Sixth Amendment right to confront the admitted statements of his co-conspirators; (4) the court lacked jurisdiction to enhance Irorere's sentence in violation of *Apprendi*

v. *New Jersey*, 530 U.S. 466 (2000); (5) the trial judge exhibited bias; and (6) prosecutors knowingly and maliciously tried him as the heroin conduit "Tony," when they knew of another "Tony."

## DISCUSSION

### *Motions to File Instanter*

Irorere has filed numerous motions throughout the course of his habeas petition. While the late reply from the government to Petitioner's original § 2255 motion could be grounds to deny its present motion to file a reply instanter, the court retains jurisdiction to grant leave for an extension of time, if found to be a "result of excusable neglect." FED.R.CIV.P. 6.

Therefore, the court grants the government's Motion and admits its response to Petitioner's § 2255 Motion to Vacate, Set Aside or Correct Judgment. Petitioner's Motion for Summary Judgment and Motions in Limine are denied as moot.

### *Habeas Corpus*

Irorere avers in his habeas petition that the government misidentified him as the alleged heroin conduit "Tony," and as a consequence, wrongly prosecuted him.

#### *Standard*

Under 28 U.S.C. § 2255, relief is available only under certain circumstances. The statute states in part:

> A prisoner in custody under sentence of court established by Act of Congress claiming the right to be released upon the ground that the

> sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Thus, relief may only be granted based on "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Williams v. United States,* 2002 WL 226861 (N.D. Ill.)(citing *Bischel v. United States,* 32 F.3d 259, 263 (7th Cir. 1994)).

Petitions under § 2255 are "neither a recapitulation of nor a substitute for a direct appeal." *McCleese v. United States,* 75 F.3d 1174, 1177 (7th Cir. 1996). Thus, the failure to raise an issue on direct appeal usually bars the defendant from raising it subsequently in the course of a collateral post-conviction. *Barker v. United States,* 7 F.3d 629, 632 (7th Cir. 1993). Furthermore, absent a showing of changed circumstance, any nonconstitutional issues that could have been, but were not, raised on direct appeal cannot be raised in a habeas petition. Habeas petitions are not meant to grant petitioner an opportunity to rehash issues already raised on direct appeal. *Belford v. United States,* 975 F.2d 310, 313 (7th Cir. 1992). Habeas petitions, however, do grant petitioners the right to raise constitutional claims for the first

time in a collateral attack if the petitioner "can demonstrate cause for the procedural default as well as actual prejudice from the failure to appeal." *Williams,* 2002 WL 226861 at *3 (citing *Barker,* 7 F.3d at 632).

## ANALYSIS

Irorere first claims that his indictment was deficient because it was not properly returned, "lack[ing] both the signature of the grand jury foreperson and that of an attorney for the government." *Irorere,* 228 F.3d at 830. However, Irorere already raised this exact issue on direct appeal. Without a further change in law or circumstance, Irorere is procedurally barred from raising the matter here. *See Belford,* 975 F.2d at 313.

Irorere next argues that he was denied his Sixth Amendment right to counsel at sentencing when he represented himself *pro se,* after having rejected his four previously appointed lawyers. In Irorere's own appeal to the Seventh Circuit, however, the court ruled that the defendant could waive his right to counsel through his own "contumacious conduct." *Irorere,* 228 F.3d at 826-27. As the Seventh Circuit noted, the district court "refused to appoint the defendant counsel at his sentencing hearing because the court found that the defendant, through his own conduct, had already frustrated four attempts by the district court to provide defendant with representation." *Id.* Therefore, pursuant to the law of the

case theory, the issue is barred. *See United States v. South*, 28 F.3d 619, 629 (7th Cir. 1994).

Third, Irorere argues that he was denied his right to receive the admitted statements of his co-conspirators in violation of the Sixth Amendment. Irorere premises his claim on the P.S.I. report dated March 24, 1999 listing two "Tony's," one with a Nigerian accent, and the other without.

On appeal, the merits of the issue pertained to the failure to include certain taped statements by Onaro and Chiawan that Irorere deemed exculpatory; in essence, the admissibility of certain exculpatory information. The Seventh Circuit held that

> [I]n light of the evidence presented at trial, there is little probability that the introduction of the disputed transcripts would have changed the outcome. Because the defendant has failed to show that the transcripts he now argues should have been disclosed to the defense were both exculpatory and material, we conclude that the government had no obligation to turn those transcripts over to the defendant.

*See Irorere*, 228 F.3d at 830.

Petitioner presently argues, however, that the portions of the taped Onaro and Chiawan statements were, in fact, hearsay and violated his Sixth Amendment right to confrontation. The Seventh Circuit ruled that the statements that were alleged exculpatory statements were not material due to Irorere's own admission of guilt and the taping of the drug transaction. *Id.* Now, he claims

- 13 -

that he was not granted the right to confront Onaro and Chiawan for the same statements. Irorere is procedurally barred due to his failure to raise this issue on direct appeal. While utilizing the same facts, Irorere is now arguing a Sixth Amendment violation of his right to confront different admitted statements, rather than those that were not deemed material enough to admit at trial.

Regardless of whether the statements by the co-conspirators were exculpatory or not, any statements made by co-conspirators are admissible under hearsay exception in FED.R.EVID.R.801(d)(2)(E). *Bourjaily v. United States*, 483 U.S. 171 (1987).

Fourth, Irorere contends that the court lacked jurisdiction to enhance his sentence in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). This argument is without merit. *Apprendi* only applies when the court enhances a sentence beyond the maximum statutory penalty. Irorere was found guilty and sentenced to a total of 100 months incarceration, well below the twenty-year maximum for each conviction of conspiring to import heroin, 21 U.S.C. §§ 963, 952(a), and the importation of heroin, 21 U.S.C. § 960(b)(3). Therefore, Petitioner's fourth claim is barred.

Fifth, Irorere claims that trial judge was biased against him. Unfortunately, Irorere did not raise this issue on direct appeal. Here, the failure to raise this issue on direct appeal constitutes waiver because the facts underlying his allegations of bias were known to Irorere prior to trial. *See Kelley v. United States*, 29

F.3d 1107, 1112 (7th Cir. 1994). Therefore, Irorere's fifth claim is barred.

Lastly, Irorere alleges that the government knowingly and maliciously prosecuted him with full knowledge of the existence of possible exculpatory evidence that he was not the alleged heroin conduit "Tony." Irorere failed to raise the claim of prosecutorial misconduct at trial or on direct appeal, even though he was well aware of it. Specifically, the only arguments closely related to prosecutorial misconduct offered on direct appeal were (1) lack of sufficient evidence of his guilt and (2) the alleged *Brady* violations. At trial and on appeal Petitioner failed to raise the issue of procedural misconduct, and he is accordingly barred from raising them in his habeas corpus petition. *See Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994). In addition, of course the evidence was not exculpatory in light of defendant's own acknowledgment that he was "Tony."

## CONCLUSION

Therefore, for the foregoing reasons, Irorere's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 is DENIED.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: September 24, 2002